IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs April 27, 2021

**TERRENCE LEWIS v. STATE OF TENNESSEE**

**Appeal from the Criminal Court for Shelby County**
**No. 08-06536      Chris Craft, Judge**

_____

**No. W2020-00653-CCA-R3-PC**

_____

Terrence Lewis, Petitioner, appeals after the trial court denied post-conviction relief and dismissed his post-conviction petition in which he alleged that he received ineffective assistance of counsel at trial. Because Petitioner failed to prove his allegations by clear and convincing evidence, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

TIMOTHY L. EASTER, J., delivered the opinion of the court, in which NORMA MCGEE OGLE and J. ROSS DYER, JJ., joined.

Sharon Fortner (on appeal), Memphis, Tennessee; and Joseph R. Taggart (at post-conviction hearing), Jackson, Tennessee, for the appellant, Terrence Lewis.

Herbert H. Slatery III, Attorney General and Reporter; Andrew C. Coulam, Assistant Attorney General; Amy P. Weirich, District Attorney General; and Leslie Byrd, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

Petitioner was indicted for one count of first degree murder and six counts of attempted first degree murder. After a jury trial, Petitioner was convicted by a jury of one count of second degree murder, two counts of attempted second degree murder, and three counts of attempted voluntary manslaughter for incidents that took place on July 4, 2007. *State v. Terrance Lewis*, No. W2012-00723-CCA-MR3-CD, 2013 WL 4080981, at *1 (Tenn. Crim. App. Aug. 9, 2013), *perm. app. denied* (Tenn. Dec. 10, 2013). At trial, there was conflicting evidence about whether the victim, Terrance Harris, was armed. *Id.* at *2-10. Petitioner testified that the victim was not only armed, but brandished a weapon. *Id.*

at *21. Petitioner claimed he pulled his weapon in response to the victim's actions and acknowledged that he fired at least three shots before he fled the scene. *Id.* Neither Petitioner nor the victim were tested for gunshot residue. *Id.* at *14-15. The State performed gunshot residue tests on two other individuals. A State's expert testified that one of those tests was inconclusive while the other indicated the person could have either handled or been near a gun when it was fired. *Id.* at *15. An expert for the State confirmed that it appeared that more than one gun was fired at the scene including a .22, a .40 caliber, and a 9 mm. *Id.* at *17-18. Petitioner fired a 9 mm. *Id.* at *21-22. Various individuals testified that Petitioner fired a weapon. *Id.* at *2-11. The victim died from gunshot wounds, and several other individuals were shot during the melee. *Id.* at *18.

One count of attempted first degree murder was dismissed because the jury could not reach a verdict. *Id.* at *23. Petitioner was convicted of the lesser-included offenses of one count of second degree murder, two counts of attempted second degree murder, and three counts of attempted voluntary manslaughter. As a result of the convictions, Petitioner was sentenced to an effective sentence of ninety-five years. The convictions and sentences were affirmed on direct appeal to this Court. *Id.* at *1.

On November 14, 2014, Petitioner filed a pro se petition for post-conviction relief. In the petition, he argued that the State failed to provide him with adequate notice of enhanced sentencing, that his sentence was enhanced in violation of *State v. Gomez*, 239 S.W.3d 733 (Tenn. 2007), and that he received the ineffective assistance of counsel. Counsel was appointed, and an amended petition for post-conviction relief was filed.[1] Petitioner filed a motion seeking the judge's recusal for various reasons, including the judge's "animosity" towards Petitioner. The post-conviction court denied the motion. Petitioner amended his petition to add an additional ground for post-conviction relief involving a biased juror.

*Post-conviction Hearing*

The post-conviction hearing was held on multiple dates. On the first date of the hearing, Petitioner testified that he filed the initial post-conviction petition pro se. He testified that he had appointed counsel but that a different trial counsel was appointed "six months prior to [him] going to trial." According to Petitioner, trial counsel did not convey to him that there were any offers from the district attorney. Specifically, Petitioner claimed that trial counsel said there were "no offers." However, on the last day of trial, Petitioner was asked by a third party why he did not "take the ten years." Petitioner claimed he had no knowledge of a ten-year offer.

---

[1] After filing an amended petition, appointed post-conviction counsel was permitted to withdraw from the case. The post-conviction court appointed new post-conviction counsel.

Petitioner also complained that he wrote letters to trial counsel prior to trial, asking him to "challenge the upgrade charges" and trial counsel failed to file a motion challenging the superseding indictment. Petitioner also asked trial counsel to "pursue witnesses," and he failed to do so.

Petitioner documented that he met with trial counsel "three or four times" prior to trial for "maybe twenty minutes" to thirty minutes each time. Petitioner told trial counsel that he did not think they were prepared to go to trial and even wrote a letter to the trial court expressing his "grievance[s]" with trial counsel. The trial court did not permit him to read the letter, but on days of trial "prior to anything" the trial judge allowed Petitioner to get on the stand to "bear out" his grievances.

Petitioner complained that trial counsel was "condescending" and "kind of dismissed any ideas or suggestions" he had about the case. Petitioner recalled that a private investigator was working on the case and that he met with her a few times prior to trial.

Petitioner testified at trial because he "thought [he] had no choice" because trial counsel "did not get any of [his] witnesses to tell [his] story." Petitioner alleged that he was not prepared to take the stand because trial counsel did not inform him about what could happen if he chose to testify at trial. Petitioner also complained that trial counsel failed to provide the testimony of a gunshot expert.

At a second hearing on the petition, the post-conviction counsel informed the court that Petitioner "fired" him and wanted to represent himself. The post-conviction court insisted that post-conviction counsel remain on as elbow counsel. Petitioner attempted to add several issues to his petition orally at the hearing. The post-conviction court listened to Petitioner's complaints about trial counsel's failure to secure a ballistics expert, several witnesses, and failure to object to improper remarks by the State at trial. Petitioner also complained about an issue of jury bias. The post-conviction court ordered the "voir dire typed up" if it had not been transcribed but elected to proceed with the hearing. Petitioner informed the post-conviction court that he was not prepared to represent himself. At that point, the post-conviction court "remove[d Petitioner's] right to represent [himself]" because he was not prepared.

Post-conviction counsel called Petitioner to testify. Petitioner testified that he recalled the prior hearing on the post-conviction petition but did not recall any of his testimony. He claimed he was "ill" and "tricked" into the hearing by post-conviction counsel.

Petitioner again claimed that trial counsel did not properly prepare for trial because he "did not speak with [Petitioner] regarding [the] defense." Further, Petitioner testified that trial counsel did not "investigate any of the witnesses" and "actually went and forced someone else to testify."

Consistent with his testimony at the earlier hearing, Petitioner testified that trial counsel represented him for about six months prior to trial and met with him three times prior to trial for about twenty minutes each time. Petitioner informed trial counsel that his actions were self-defense. Petitioner explained that he initially came to the scene to defend his sister but ended up having to defend himself.

Petitioner admitted that his sister testified at trial to support his theory of self-defense but complained that a portion of her testimony was stricken. Petitioner complained that trial counsel did not call "the Cleaves family"[2] or "Sheila Minnis" to testify even though he had asked trial counsel to do so.

Petitioner complained that trial counsel failed to get a ballistics expert to testify. He claimed a ballistics expert would have shown that the gunshots occurred differently than what the State alleged and could have aided his self-defense claim. Petitioner explained that he "had no other choice" but to testify at trial.

Petitioner again testified that he received information after the trial that there was an offer from the State. Petitioner complained that he never received this offer prior to trial. Petitioner also complained about trial counsel's failure to object to the State's closing argument and failure to prepare Petitioner for sentencing. Specifically, Petitioner complained that trial counsel failed to offer information about his psychological exam.

Trial counsel testified that he was approximately the third attorney to represent Petitioner and that he was appointed about eight months prior to trial. At the time of Petitioner's trial in 2011, trial counsel had been licensed to practice law for 14 years. At that point, he had taken about 55 to 65 cases to trial. Trial counsel felt prepared for Petitioner's trial. He did not recall how many times he visited with Petitioner prior to trial or the length of those visits.

Trial counsel remembered that there was a private investigator involved in the pretrial preparation. Trial counsel recalled Petitioner "seemed to be" cooperative. Trial counsel recalled a favorable verdict in Petitioner's case because Petitioner was ultimately convicted of a lesser-included offense, second degree murder, rather than first degree

---

[2] At one point in the transcript of the post-conviction hearing, these potential witnesses are referred to as the "Graves family."

- 4 -

murder. Trial counsel recalled that a post-trial jury poll indicated that had Petitioner not taken the stand at trial, the jury would have convicted Petitioner of voluntary manslaughter.

Trial counsel recalled talking to Petitioner about the potential for impeachment by the State with his prior conviction for especially aggravated robbery if he testified at trial. Trial counsel thought that the jury perceived Petitioner as "violent."

Trial counsel did not recall Petitioner giving him a list of witnesses but did not dispute that Petitioner may have provided him with names. Trial counsel recalled that Petitioner's brother, Carlos Lewis, would have been a helpful witness at trial but that he "declined to come" to testify because of an outstanding warrant.

Trial counsel could not recall "how a ballistics expert would have helped" in Petitioner's case. Trial counsel explained that he had used that type of expert before and that "[h]ad it been helpful" he would have asked the court for that type of expert.

Trial counsel recalled that the defense "was sort of a self-defense." Trial counsel also admitted that he did not present any witnesses in mitigation at the sentencing hearing because "there weren't any." Trial counsel did not recall any psychological issues that would have impacted sentencing.

At the conclusion of the second hearing, on November 19, 2018, the post-conviction court told Petitioner that he could have another hearing date to present additional evidence in January of 2019 if he could secure witnesses by subpoena. There are no other transcripts in the record.

On March 20, 2020, the post-conviction court entered a scopious order denying post-conviction relief. The post-conviction court determined that Petitioner failed to prove that the State failed to provide adequate notice of enhanced sentencing. To the contrary, the post-conviction court determined that the State filed a notice of intent to seek enhancement on two occasions prior to trial.

With respect to Petitioner's complaint that enhancement factors were applied that were not submitted the jury, the post-conviction court determined that this issue was without merit because the holding in *Gomez* did not apply to Petitioner's case.

The post-conviction court determined that Petitioner failed to show ineffective assistance of counsel with regard to communication of plea offers. Specifically, the post-conviction court found that Petitioner failed to show prejudice or deficient performance where there was no testimony that a ten-year offer actually existed that was not communicated to Petitioner prior to trial.

The post-conviction court also found Petitioner failed to show counsel was ineffective for failing to properly prepare for trial, meet with Petitioner and/or investigate. The post-conviction court accredited the testimony of trial counsel, who was experienced in litigating criminal matters, that he was prepared for trial. The post-conviction court also noted that trial counsel discussed the perils of testifying at trial with Petitioner and insisted on a *Momon* hearing prior to Petitioner's testimony. The post-conviction court also noted that Petitioner failed to introduce ballistics tests or testimony at the hearing to support his argument that trial counsel was ineffective in failing to secure such a witness. With regard to Petitioner's complaints that trial counsel failed to introduce evidence of mitigation at sentencing, the post-conviction court noted that Petitioner failed to introduce any of this evidence at the hearing. Thus, Petitioner failed to sustain his burden to establish that he is entitled to post-conviction relief on the issue of mitigation.

As to Petitioner's complaint that trial counsel failed to call witnesses at trial, the post-conviction court noted that the post-conviction petition languished for "over 5 years, over 50 settings" and the witnesses "were never produced." The post-conviction court again determined Petitioner failed to sustain his burden with regard to this issue.

The post-conviction court also denied Petitioner relief on the basis that trial counsel failed to interview potential State witnesses with regard to prior inconsistent statements. Finally, the post-conviction court determined that Petitioner failed to show prejudice with regard to a biased juror because the juror was actually excused as an alternate prior to deliberation. The post-conviction court denied relief on the basis that Petitioner failed to carry his burden by clear and convincing evidence.

Petitioner filed a notice of appeal on April 29, 2020. Ordinarily, a notice of appeal filed 40 days after the entry of the order denying relief would be deemed untimely. *See* Tenn. R. App. P. 3. However, on March 25, 2020, the Tennessee Supreme Court issued an order entitled "In Re: Covid-19 Pandemic," extending deadlines set forth in court rules set to expire between March 13, 2020 and May 5, 2020 until May 6, 2020. Thus, Petitioner's notice of appeal was timely.

*Analysis*

On appeal, Petitioner argues that the post-conviction court erred by denying relief on the basis of ineffective assistance of counsel. Specifically, Petitioner complains that trial counsel was ineffective for failing to consult with and utilize a ballistics expert at trial and that trial counsel was ineffective for failing to present mitigating factors at sentencing. Petitioner appears to abandon his remaining issues on appeal. *See Ronnie Jackson, Jr. v. State*, No. W2008-02280-CCA-R3-PC, 2009 WL 3430151, at *6 n.2 (Tenn. Crim. App.

Oct. 26, 2009) ("While the Petitioner raised additional issues in his petition for post-conviction relief, he has abandoned those issues on appeal."), *perm. app. denied* (Tenn. Apr. 16, 2010). The State argues that Petitioner did not "show by clear and convincing evidence facts that would entitle him to relief."

Post-conviction relief is available for any conviction or sentence that is "void or voidable because of the abridgment of any right guaranteed by the Constitution of Tennessee or the Constitution of the United States." T.C.A. § 40-30-103. In order to prevail in a claim for post-conviction relief, a petitioner must prove his factual allegations by clear and convincing evidence. T.C.A. § 40-30-110(f); *Momon v. State*, 18 S.W.3d 152, 156 (Tenn. 1999). "Evidence is clear and convincing when there is no serious or substantial doubt about the correctness of the conclusions drawn from the evidence." *Hicks v. State*, 983 S.W.2d 240, 245 (Tenn. Crim. App. 1998). On appeal, a post-conviction court's findings of fact are conclusive unless the evidence preponderates otherwise. *Vaughn v. State*, 202 S.W.3d 106, 115 (Tenn. 2006). Accordingly, questions concerning witness credibility, the weight and value to be given to testimony, and the factual issues raised by the evidence are to be resolved by the post-conviction court, and an appellate court may not substitute its own inferences for those drawn by the post-conviction court. *State v. Honeycutt*, 54 S.W.3d 762, 766-67 (Tenn. 2001). However, the post-conviction court's conclusions of law and application of the law to the facts are reviewed under a purely de novo standard, with no presumption of correctness. *Fields v. State*, 40 S.W.3d 450, 458 (Tenn. 2001).

*Ineffective Assistance of Counsel*

Petitioner complains about trial counsel's representation. Specifically, Petitioner argues that the post-conviction court erred when it failed to find that trial counsel provided ineffective assistance because he failed to utilize an independent ballistics expert and failed to present mitigating factors at the sentencing hearing.

Both the Sixth Amendment to the Constitution of the United States and article I, section 9 of the Tennessee Constitution guarantee the right of an accused to the effective assistance of counsel. *See Davidson v. State*, 453 S.W.3d 386, 392-93 (Tenn. 2014). In order to sustain a claim of ineffective assistance of counsel, a petitioner must demonstrate that counsel's representation fell below the range of competence demanded of attorneys in criminal cases. *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975). Under the two-prong test established by *Strickland v. Washington*, 466 U.S. 668, 687 (1984), a petitioner must prove that counsel's performance was deficient and that the deficiency prejudiced the defense. *See State v. Taylor*, 968 S.W.2d 900, 905 (Tenn. Crim. App. 1997) (noting that the same standard for determining ineffective assistance of counsel applied in federal cases also applies in Tennessee). Because a petitioner must establish both elements in order to

prevail on a claim of ineffective assistance of counsel, "failure to prove either deficient performance or resulting prejudice provides a sufficient basis to deny relief on the claim." *Henley v. State*, 960 S.W.2d 572, 580 (Tenn. 1997). "Indeed, a court need not address the components in any particular order or even address both if the [petitioner] makes an insufficient showing of one component." *Goad v. State*, 938 S.W.2d 363, 370 (Tenn. 1996) (citing *Strickland*, 466 U.S. at 697).

The test for deficient performance is whether counsel's acts or omissions fell below an objective standard of reasonableness under prevailing professional norms. *Strickland*, 466 U.S. at 688; *Henley*, 960 S.W.2d at 579. This Court must evaluate the questionable conduct from the attorney's perspective at the time, *Hellard v. State*, 629 S.W.2d 4, 9 (Tenn. 1982), and "should indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance," *State v. Burns*, 6 S.W.3d 453, 462 (Tenn. 1999).

Even if a petitioner shows that counsel's representation was deficient, the petitioner must also satisfy the prejudice prong of the *Strickland* test in order to obtain relief. The question is "whether counsel's deficient performance renders the result of the trial unreliable or the proceeding fundamentally unfair." *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993). A petitioner must show that there is a reasonable probability "sufficient to undermine confidence in the outcome" that, "but for counsel's unprofessional errors, the result of the proceeding would have been different." *Burns*, 6 S.W.3d at 463 (quoting *Strickland*, 466 U.S. at 694).

Here, Petitioner complained about the lack of a ballistics expert at trial. However, Petitioner failed to present any evidence at the post-conviction hearing, other than his own opinion, as to what a ballistics expert would have testified to if one had been called at trial. Petitioner relies on *Hinton v. Alabama*, 571 U.S. 263 (2014), to support his argument. In *Hinton*, trial counsel was deemed deficient for failing to retain a forensic firearm expert. *Id.* at 273. However, in *Hinton*, the identity of the shooter was an issue and the case "turned on" the testimony of expert witnesses. *Id.* at 265. Petitioner's identity was not at issue in this case.

In order to receive post-conviction relief, Petitioner had to prove that trial counsel's failure to present the expert was prejudicial.

> [W]hen a petitioner contends that trial counsel failed to discover, interview, or present witnesses in support of his defense, . . . the petitioner [must prove] that (a) a material witness existed and the witness could have been discovered but for counsel's neglect in his investigation of the case, (b) a known witness was not interviewed, (c) the failure to discover or interview a witness inured

to his prejudice, or (d) the failure to have a known witness present or call the witness to the stand resulted in the denial of critical evidence which inured to the prejudice of the petitioner.

*Black v. State*, 794 S.W.2d 752, 757 (Tenn. Crim. App. 1990). Without any testimony from an expert, it would be a guessing game to conclude that his or her testimony would have affected the outcome of the trial. Moreover, the post-conviction court noted that Petitioner's own testimony at trial and the testimony of multiple witnesses indicated he fired shots at the victim. By failing to show how ballistics tests or expert testimony would have changed the outcome of the trial, Petitioner has failed to prove this allegation of ineffective assistance of counsel by clear and convincing evidence. Petitioner is not entitled to relief on this issue.

Petitioner also failed to prove that trial counsel was ineffective for failing to offer mitigation evidence at the sentencing hearing. *Black*, 794 S.W.2d at 757. Petitioner failed to offer any evidence at the post-conviction hearing about a psychological report or testimony regarding mental health testing. Therefore, Petitioner has failed to establish that he was entitled to post-conviction relief. Petitioner is not entitled to relief on this issue.

*Conclusion*

For the foregoing reasons, the judgment of the post-conviction court is affirmed.

_____
TIMOTHY L. EASTER, JUDGE